**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| TENDEKA, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-13-1764 |
| | § | |
| NEIL GLOVER, *et al*. | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

On June 17, 2013, Tendeka, Inc. sued Neil Glover, Swell X, Ltd., and Elite Elastomers, Inc. alleging breach of contract and tortious interference with contract. On August 6, 2013, Tendeka amended the complaint. Neil Glover has moved to dismiss for lack of personal jurisdiction, (Docket Entry No. 14); Neil Glover and Swell X have moved to dismiss based on forum non conveniens or alternatively to abstain, (Docket Entry No. 10); and to dismiss for failure to state a claim, (Docket Entry No. 12). Elite does not join those motions or otherwise challenge the pleadings.

Based on a careful review of the pleadings, the motions and relevant submissions, and the applicable law, the court grants Glover's motion to dismiss for lack of personal jurisdiction, without prejudice; denies Swell X's motion to dismiss based on forum non conveniens; grants in part and denies in part the motion to dismiss for failure to state a claim; and denies the motion to abstain. The result is that the claims against Glover are dismissed without prejudice and this action will proceed against Swell X and Elite in all claims asserted other than the claim for tortious interference with other customer contracts.

The reasons for these rulings are explained below. A status and scheduling conference is set

for **March 24, 2014** at 4:30 p.m. in Courtroom 11-B.

## I. Background

The following factual allegations from the first amended complaint are accepted as true for the purpose of these motions. Tendeka B.V., a Netherlands company, owns two subsidiaries, Swellfix UK, Ltd. and the plaintiff, Tendeka, Inc. ("Tendeka"). (FAC ¶ 15). Tendeka is a Delaware corporation with its principal place of business in Houston, Texas. (FAC ¶ 1). Tendeka is responsible for Tendeka B.V.'s United States operations. Tendeka develops and manufactures rubber devices called "swellable packers" that are used for oil-and-gas fracking. (FAC ¶ 10).

Producing swellable packers requires several steps. (FAC ¶ 11). First, a "unique array of ingredients [are combined] to generate an elastomer compound." (*Id.*). Second, the compound is "vulcanised" by exposure "to a very specific level of heat, for a period of time that is just as specific." (*Id.*). Finally, the elastomer compound is added to a pipe. (*Id.*). Tendeka compartmentalizes this process by using separate suppliers to make and vulcanise the elastomer compound and to add it to the pipe. (FAC ¶ 12).

Elite Elastomers, Inc. is a Mississippi corporation with its principal place of business in Ripley, Mississippi. (FAC ¶ 4). On October 30, 2009, Tendeka and Elite entered into a License and Supply Agreement (LSA). (FAC ¶ 7). Under the LSA, Elite "agreed to manufacture for Tendeka the elastomer compounds used to make [Tendeka's] swellable packers." Because this required access to Tendeka's "'proprietary formulations'" and other confidential information, the LSA included "confidentiality provisions" and an "exclusivity clause that permitted Elite to sell the elastomer compounds to Tendeka alone." (FAC ¶ 13). The LSA permitted Elite to develop other elastomer compounds but put the "burden on Elite to prove that the 'information was developed by

it without use of [Tendeka's] confidential information, as evidenced by contemporaneous documents.'" (*Id.* (citing LSA ¶ 10(b)). Elite was also prohibited from "attempting to reverse engineer Tendeka's intellectual property." Elite was not set up to perform the manufacturing steps other than generating the compound. That is, Elite was not equipped to vulcanise the compound or put the compound onto pipes. These limits were consistent with Tendeka's compartmentalization strategy. (*Id.* at ¶ 14).

Neil Glover, a Scotland resident and United Kingdom citizen, (FAC ¶ 2), worked for Swellfix UK Ltd. as a Product Line Manager. (FAC ¶ 15). Glover's job was promoting swellable packers and acting as a liaison to Tendeka's component suppliers. (*Id.*) Glover "dealt with Elite," was "aware of the terms" of the LSA, "negotiated an amendment" to the LSA, and was also aware that Tendeka's swellable-packer formula was proprietary. (FAC ¶ 16). Glover knew the limits of Elite's knowledge of the manufacturing process and how it worked. (*Id.*). He also knew that other suppliers besides Elite were responsible for the later steps in the manufacturing process.

After leaving Swellfix, Glover formed a new swellable-packer company, Swell X, a Scottish entity. Swell X's North American sales manager is in Houston, Texas. (FAC ¶¶ 3, 18). Tendeka alleges in this action that Neil Glover formed Swell X "to engage in the manufacture and sale of swellable packers [and that, with] Glover's assistance, Elite secretly began working to manufacture elastomer compounds using Tendeka's proprietary formulations and, then, to vulcanise them into a facsimile of the Company's swellable packers." (*Id.*). "In an effort to circumvent its contractual obligations under the LSA with Tendeka, Elite set up a separate company specifically for this purpose . . . which was to manufacture packers based on Tendeka's confidential information [and] repeatedly denied any involvement with Glover following his departure from Tendeka." (*Id.*).

Although Glover owns most of Swell X's stock, principals of Elite invest in Swell X, through a company named LSJ Holdings, LLC. (*Id.*).

Tenedka alleges that it conducted an internal investigation after Glover left Swellfix and set up Swell X. This "revealed that Glover had downloaded from the Company's servers a wide range of confidential information, the vast majority of which was wholly unnecessary to his job duties at Tendeka, but almost all of which would be enormously useful in the event Elite was preparing to strike out on its own and make a play for a piece of Tendeka's market share." (FAC ¶ 23). Tendeka alleges that "when Glover and Swell X tapped Elite to manufacture swellable packers based on proprietary formulations and processes belonging to the Company, they induced Elite to breach both (i) its confidentiality obligations under the LSA; and (ii) its obligations, under the same agreement, to sell swellable packers – which incorporate Tendka's proprietary technology and know-how – exclusively to the Company." (FAC ¶ 25).

In the first amended complaint, Tendeka asserts causes of action for breach of the LSA and tortious interference with contractual relations. Tendeka alleges that Elite breached the LSA's confidentiality provisions and exclusivity clauses. Tendeka claims that Elite was "aware that information supplied to it by Glover was confidential and proprietary" and utilized this "proprietary and confidential information to manufacture swellable packers for Glover and his company" Swell X. (FAC ¶¶ 29, 30).

Tendeka asserts the tortious interference with contractual relations claims against all defendants; Glover, Swell X, and Elite. Tendka alleges that they "willfully and intentionally interfered with [Tendeka's contractual] relationships by offering to sell to [various oilfield services companies] swellable packers that [they] produced – in violation of the LSA – using confidential

and other proprietary information[.]"[2]  (FAC ¶ 34).  Tenedka also alleges that all the defendants "willfully and intentionally induced Elite to breach" the contract obligations it owed Tendeka.  (FAC ¶ 35).  Tendeka seeks damages and a preliminary injunction against the defendants' continued production, marketing, and sale of swellable packers.   (FAC ¶¶ 36-43).

Glover moves to dismiss the claims against him for lack of personal jurisdiction.  Glover and Swell X move to dismiss based on forum non conveniens or abstention and for failure to state a claim.  Each issue is addressed below.

## II.   Neil Glover's Motion to Dismiss for Lack of Personal Jurisdiction

### A.   The Legal Standard for Personal Jurisdiction

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the "plaintiff bears the burden of establishing a district court's jurisdiction over a non-resident, but it need only make a prima facie case" if the district court does not conduct an evidentiary hearing.  *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (citing *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994)). In deciding whether personal jurisdiction exists, "the district court may receive 'any combination of the recognized methods of discovery,' including affidavits, interrogatories, and depositions to assist it in the jurisdictional analysis."  *Little v. SKF Sverige AB*, No. H-13-cv-1760, 2014 WL 710941, at * 3 (S.D. Tex. Feb. 24, 2014) (quoting *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008)).

"Proof by a preponderance of the evidence is not required."  *Johnston*, 523 F.3d at 609

---

[2]  Though the complaint appears to assert that the defendants interfered with contracts Tendeka had with various customers, Tendeka's briefing on the pending motions make clear that they are only pursuing claims for breach of the LSA and tortious interference with the LSA.  Glover and Swell X moved to dismiss the complaint for failing to identify the oilfield companies Swell X contacted and how that amounted to tortious interference.  Tendeka did not respond to that argument and characterized the tortious interference claim as one for interference with the LSA.

(citing *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990)).  "'[O]n a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists.'"  *Id.* (quoting *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985)).  "When the factual differences are found in favor of [a plaintiff] at this motion phase in the litigation . . . [it] has presented a *prima facie* case for personal jurisdiction."  *Id.*  In short, the "court resolves all conflicts in the evidence in favor of the plaintiff and accepts as true all of the plaintiff's uncontroverted allegations."  *Little*, 2014 WL 710941, at *3 (citing *Johnston*, 523 F.3d at 609).

"A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant (1) as allowed under the state's long-arm statute; and (2) to the extent permitted by the Due Process Clause of the Fourteenth Amendment."  *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009).  "The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts."  *Walden v. Fiore*, No. 12-574, — U.S. —, —, 134 S.Ct. 1115, 1121 (2013) (citing *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 291 (1980)).  "'Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis.'"  *Mullins*, 564 F.3d at 386 (quoting *Johnston*, 523 F.3d at 609).  "To satisfy the requirements of due process, the plaintiff must demonstrate '(1) that the non-resident purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the state; and (2) that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.'"  *Id.* (quoting *Johnston*, 523 F.3d at 609).

As a general principal, a "defendant establishes minimum contacts with a state if 'the defendant's conduct and connection with the forum state are such that [he] should reasonably anticipate being haled into court there.'"  *Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 379 (5th Cir. 2002) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).  "There must be some act whereby the defendant 'purposely avails [himself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'"  *Id.* (quoting *Burger King*, 471 U.S. at 379).  "A nonresident 'may  permissibly structure his primary conduct so as to avoid being haled into court in a particular state.'"  *Id.* (quoting *World-Wide*, 444 U.S. at 297).  Two types of minimum contacts exist: "those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction.'"  *Johnston*, 523 F.3d at 609 (quoting *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001)).

Tendeka does not argue that the court has general jurisdiction over Glover.  Tendeka's response brief makes clear that the issue is whether "the court has specific jurisdiction over Glover for the purposes of this case only."  (Docket Entry No. 19 at 2).

"In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011) (quotation omitted).  The question is "whether there was 'some act by which the defendant purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  *Id.* at 2854 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

A unanimous Supreme Court recently rearticulated the framework for analyzing specific

personal jurisdiction. *Walden*, 134 S.Ct. at 1121. Specific-jurisdiction questions "'focus[] on the relationship among the defendant, the forum, and the litigation.'" *Id.* (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). "For a State to exercise jurisdiction consistent with due process, the defendant's *suit-related* conduct must create a substantial connection with the forum State." *Id.* (emphasis added). A court considers two issues in deciding whether a defendant's suit-related conduct creates a sufficient relationship with the forum state. *See id.* at 1122.

"First, the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Id.* (quoting *Burger King*, 471 U.S. at 475). The due-process limits on a state's "adjudicative authority principally protect the liberty of the nonresident defendant–not the convenience of the plaintiff[] or third parties" *Id.* (citation omitted). The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id.* (citations omitted). The "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). "Put simply, however significant the *plaintiff*'s contacts with the forum may be, those contacts cannot be decisive in determining whether the *defendant*'s due process rights are violated." *Walden*, 134 S.Ct. at 1122 (quotation omitted) (emphasis added).

"Second, [the] 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* (citations omitted). The Supreme Court has, for example, "upheld the assertion of jurisdiction over defendants who have purposefully reach[ed] out beyond their State and into another by . . . entering a contractual

8

relationship that envisioned continuing and wide-reaching contacts in the forum State." *Id.* (citations omitted). "But the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* Though "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties[,] a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 1123 (citations omitted). "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State." *Id.* (quotation omitted).

**B.    Analysis**[3]

Glover argues that this Texas court lacks personal jurisdiction over him because none of the activities that gave rise to this lawsuit took place in Texas and he has not engaged in business in Texas.  In response, Tendeka first points to the complaint allegations:

> 6.      This Court has personal jurisdiction over Defendants Glover and Swell X because, in 2010 and 2011, Glover traveled to Houston on approximately a half dozen occasions – in each instance for one to two weeks – to meet with Tendeka representatives in connection with the events that are [the] subject matter jurisdiction of this suit. On information and belief, Glover, through Swell X, is doing business at its North American sales operation in Houston, Texas.

---

[3] To decide the personal-jurisdiction issue, the court has reviewed the amended complaint, (Docket Entry No. 6); the submissions attached to Glover's motion to dismiss, including the declaration of Neil Glover, (Docket Entry No. 14-1), Glover's terms and conditions of employment, (Docket Entry No. 14-2), Glover's compromise and termination agreement with Swellfix, (Docket Entry No. 14-3), and the documents related to the related proceedings in Scotland, (Docket Entry Nos. 14-4 and 14-5); the submissions attached to Tendeka's response, including the declaration of Ken Miller, Vice President of North and South America of Tendeka, (Docket Entry No. 19-2), LSA (Docket Entry No. 19-3); and the documents attached to Glover's reply, (Docket Entry Nos. 30-1 and 30-2).

The complaint includes the following uncontested facts:

- Tendeka is a Delaware corporation and its principal place of business is in Houston.
- Elite is a Mississippi company.
- Glover is a United Kingdom citizen and resides in Scotland.
- Glover's company, Swell X, "conducts business in North America through its North American Sales Manager located in Houston."

Tendeka submitted a declaration from Kevin Miller, vice-president for its North and South America divisions, stating that during Glover's employment for Swellfix, he had "traveled to Houston to discuss product development for Tendeka's customers with the sales team, [which] included Elite's role in assisting Tendeka in the development of products to meet the demands of Tendeka's customers." (Miller Decl. ¶ 12).

In his motion to dismiss, Glover concedes that "during the scope of his employment, Swellfix UK sent [him] to the Houston office of Tendeka, Inc." which functioned "as the United States sales office for Tendeka, B.V. and/or Swellfix." (Docket Entry No. 14 at 2). Glover states that these trips occurred more than a year before the actions giving rise to this lawsuit. He argues that he was fired from Swellfix in November 2011 and initiated contact with Elite a month later, in December 2011. Tendeka also argues that Swell X "maintains an office in the Woodlands and, from that location, its U.S. sales agent has been contacting Tendeka's customers." (*Id.* ¶ 13). Glover submitted an affidavit (attached to the motion to dismiss for forum non conveniens) stating that in "June 2013, Swell X engaged a sales associate in Houston, Texas. However, Swell X does not maintain an office or bank account in Texas. The sales associate works out of his home. . . . The sales associate in Houston has no knowledge regarding the dispute between Tendeka, Inc. and Swell X . . . ." (Docket Entry No. 10-7 at ¶ 5).

10

In his declaration, Glover clarified the events surrounding Swell X's creation and his relationship with Elite and its principals. In December 2011, Glover contacted Steve Glidewell, Elite's president, in Ripley, Mississippi. Glover initiated this contact from Scotland. In January 2012, Glover traveled to Ripley to discuss forming a new company to make swellable packers. Several meetings followed, none of them took place in Texas. Glover eventually formed Swell X in Aberdeen, Scotland. Glover and Glidewell met several more times between March and May 2012. All of these meetings took place in either Scotland or Mississippi. Glover did not meet with anyone in Texas. He has never been employed in Texas, does not maintain bank accounts in Texas, never paid property taxes in Texas, and has never filed a lawsuit in Texas.

Tendeka does not contest this narrative. Instead, Tendeka maintains that Glover's interference with the LSA caused Elite to break its contract with Tendeka, a Texas resident, and injured Tendeka in Texas.

The question is whether the court has personal jurisdiction over Glover based on his alleged tortious interference with the Elite-Tendeka contract. The principles that the Supreme Court laid out in *Walden* "apply when intentional torts are involved." *Walden*, 134 S.Ct. at 1123. "A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Id.* The court must examine the "various contacts [that] the [defendant] created with [Texas] (and not just with the plaintiff)" by allegedly interfering with the Tendeka-Elite LSA. *Id.* The court must also be cautious not to "impermissibly allow[] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id.* at 1125. "Such reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis."

11

*Id.*

Tendeka has failed to make a prima facie showing of specific personal jurisdiction over Glover.  Tendeka has failed to show that Glover directed actions towards Texas that tortiously interfered with the Tendeka-Elite LSA.  Glover has pointed to uncontested facts showing that all of the actions he took that allegedly caused or encouraged Elite to breach the terms of the LSA occurred in Mississippi or Scotland.  Glover has also shown that any Houston travels taken before his termination from Swellfix were solely within the scope of his Swellfix employment and were unrelated to the tortious interference claim that Tendeka asserts.

Tendeka's argument that the breach that Glover caused or encouraged had a tortious effect in Texas sufficient to confer jurisdiction is unpersuasive.  The Supreme Court has recently cautioned against giving too much weight to the effects of a tort and the locus of the injury.  "[M]ere injury to a forum resident is not a sufficient connection to the forum.  Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State.  The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."  *Id.*  An intentional tort that affects a plaintiff in a particular state is relevant for jurisdictional purposes only insofar as that tort reveals the defendant's contacts with that state. Tendeka's location and Glover's relationship with Tendeka and other third parties cannot confer jurisdiction over Glover in Texas if he did not direct the actions that tortiously interfered with the LSA toward Texas.   Specific jurisdiction exists only "when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities."  *Walk Haydel & Assocs.,* 517 F.3d at 243 (internal

quotation marks omitted).  "The foreseeable effects of a tort 'are to be assessed as *part* of the analysis of the defendant's relevant contacts with the forum,'" but "[f]oreseeable injury alone is not sufficient to confer jurisdiction, absent the direction of specific acts toward the forum."  *Wein Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999) (citing *Allred v. Moore & Peterson*, 117 F.3d 278, 286–87 (5th Cir. 1997); *Jobe v. ATR Marketing, Inc.*, 87 F.3d 751, 753–54 (5th Cir. 1996); *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763 (5th Cir. 1988)).  Glover's acts leading up to Elite's alleged breach of the LSA were not directed towards Texas.

Tendeka's reliance on *McFadin v. Gerber*, 587 F.3d 753, 761 (5th Cir. 2009), is misplaced. The Fifth Circuit did state in that case that "an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct."  *Id.* (quotation omitted).  The Fifth Circuit, however, immediately emphasized that "foreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum."  *Id.* (quotation omitted).  The Fifth Circuit has also recently stated "[t]his type of jurisdiction is rare . . . and the effects of an alleged intentional tort are merely part of the analysis of minimum contacts."  *Bustos v. Lennon*, 538 F. App'x 565, 568 (5th Cir. 2013) (nonprecedential) (citing *Stoman Realty, Inc. v. Wercinski*, 513 F.3d 476, 486 (5th Cir. 2008)).

Tendeka has not made a jurisdictional argument regarding Glover based on Swell X's alleged presence in the Southern District of Texas.  Swell X has a sales associate in Houston, but Tendeka does not argue or point to evidence that Swell X's presence in the Southern District of Texas establishes jurisdiction over Glover in this Texas court.  *See* Tendeka Response Br. at  12 ("In this

case, Glover among other things, induced Elite to break its contract with a Texas resident, Tendeka, causing injury to it."); *id.* at 14 ("Tendeka's claims, by contrast, are for tortious interference with its contract with Elite and for Elite's breach of that contract.").

Tendeka filed this suit alleging tortious interference with the LSA on June 17, 2013. Swell X did not have an associate in Houston until June 2013. The sales-associate position postdates Glover's acts and communications that Tendeka alleges as the basis for alleging his tortious interference with the LSA. Though the complaint was amended in August 2013 to reflect the associate's presence in Texas and added allegations that Swell X was interfering with Tendeka's contracts with its customers, those claims do not relate to jurisdiction over Glover for tortiously interfering with the LSA between Tendeka and Elite by causing or encouraging Elite to produce product in violation of the LSA.[4]

Glover's motion to dismiss for lack of personal jurisdiction is granted. The claims against him are dismissed, without prejudice to pursuing them where he is subject to jurisdiction.

## II.     Swell X's Motion to Dismiss for Forum Non Conveniens[5]

Swell X asks this court to dismiss because Scotland is the appropriate forum for the claims

_____

[4]   Tendeka does not argue that Swell X's actions in Texas support finding specific personal jurisdiction over Glover. Though the complaint alleges that "Glover, through Swell X, is doing business at its North American sales operation in Houston, Texas," Tendeka conceded that the jurisdictional issue turns on whether Glover's own acts established personal jurisdiction. In response to Swell-X's motion to dismiss, Tendeka did not respond to the argument that the claims based on Swell X's contacts with Tendeka customers (as opposed to suppliers) should be dismissed. As explained below, those claims are dismissed.
Tendeka does not explain how Swell X's sales office in Texas bears on jurisdiction over Glover. "The Fifth Circuit has identified a 'laundry list' of factors that courts should apply in making an alter ego determination." *Baker Hughes Inc. v. Homa*, No. H-11-3757, 2013 WL 5775636, at *13 (S.D. Tex. Oct. 25, 2013) (Rosenthal, J.) (quoting *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 593 (5th Cir. 1999)). Tendeka does not plead an alter ego theory of personal jurisdiction or address any of the Fifth Circuit's factors for attributing the Texas contacts of Swell X to Glover.

[5]   Because the court has dismissed Glover from this lawsuit, this ruling only relates to Swell X's motion to dismiss for forum non conveniens.

against it.

### A.    The Applicable Legal Standard

"The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947).  "A court's authority to effect foreign transfers through the doctrine of *forum non conveniens* 'derives from the court's inherent power, under Article III of the Constitution, to control the administration of the litigation before it and to prevent its process from becoming an instrument of abuse, injustice, or oppression.'" *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 828 (5th Cir. 1993) (citation omitted).  "When an alternative forum has jurisdiction to hear the case and when trial in the plaintiff's chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems,' the court may, in exercise of its sound discretion, dismiss the case.'" *Kempe v. Ocean Drilling & Exploration Co.*, 876 F.2d 1138, 1141 (5th Cir. 1989) (quoting *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)).

"[A] forum non conveniens dismissal must be based on the [court's] finding that, when weighed against plaintiff's choice of forum, the relevant public and private interests strongly favor a specific, adequate and available forum." *Verba-Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1245 (5th Cir. 1983).  The movant "bears the burden of invoking the doctrine and moving to dismiss in favor of a foreign forum." *In re Air Crash*, 821 F.2d 1147, 1164 (5th Cir. 1989).  "This burden of persuasion runs to all the elements of the forum non conveniens analysis." *Id.*  Swell X must "demonstrate (1) the existence of an available and adequate alternative forum and (2) that the

balance of relevant private and public interest factors favors dismissal." *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003). "In addition to the balancing of relevant private interest factors, the court must give 'the relevant deference' to the plaintiff's choice of forum." *Alpine View Co. v. Atlas Copco AB,* 205 F.3d 208, 221–22 (5th Cir. 2000) (quoting *In re Air Crash*, 821 F.2d at 1165). To meet this relatively high burden, Swell X "must supply the Court with enough information for it to conduct a meaningful inquiry and balance the parties' interests." *Blum v. Gen. Elec. Co.*, 547 F. Supp. 2d 717, 725 (W.D. Tex. 2008) (citing *Empresa Lineas Maritimas Argentinas, S.A. v. Schichau–Unterweser, A.G.*, 955 F.2d 368, 371 (5th Cir. 1992)).

"The *forum non conveniens* determination is committed to the sound discretion of the trial court. It may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981).

## A.    The Texas Forum is Presumptively Valid

"Normally, there is a 'strong presumption in favor of the plaintiff's choice of forum that may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum.'" *Blum*, 547 F. Supp. 2d at 726 (quoting *Schexnider v. McDermott, Int'l, Inc.*, 817 F.2d 1159, 1163 (5th Cir. 1987)). "'[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *DTEX LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 794 (5th Cir. 2007) (quoting *Gulf Oil Corp.*, 330 U.S. at 508). "This presumption, however, applies with less force where the plaintiffs are foreign." *Blum*, 547 F. Supp. 2d at 726

(citation omitted).  "When a plaintiff chooses a foreign forum for its claims, courts are reluctant to assume that convenience motivated that choice[.]"  *Empresa Lineas*, 955 F.2d at 373.

Swell X makes much of the fact that Tendeka is a subsidiary of Tendeka B.V., a Netherlands company.  But Tendeka is a Delaware corporation with its principal place of business in Houston.  Tendeka alleges that Elite breached its contract with Tendeka and that Swell X is liable for that breach.  Under the LSA, Tendeka and Elite agreed that contract disputes would be "governed by and construed in accordance with the State of Texas" and that Tendeka and Elite agreed to "submit to the exclusive jurisdiction in the federal or state courts located in Harris County, Texas, and agree that venue is proper and convenient in such forum."  (Docket Entry No. 19-3 at 9).  Texas law applies to the contract.  Tendeka had to bring the breach of contract claim in this forum.  The claim that Swell X tortiously interfered with the Tendeka-Elite contract is related to the breach of contract claim.  Tendeka's choice to include the tortious interference claim against Swell X in the same action as the breach of contract claim against Elite is entitled to the presumption that it is a convenient forum.

### B.    The Private-Interest Factors

The private-interest factors do not weigh in Swell X's favor.  In evaluating the private interest factors, the court considers:

> (i) the relative ease of access to sources of proof; (ii) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (iii) possibility of view of [the] premises, if view would be appropriate to the action; (iv) all other practical problems that make trial of a case easy, expeditious and inexpensive . . . enforceability of judgment[; and whether] the plaintiff [has sought to] vex, harass, or oppress the defendant.

*DTEX, LLC*, 508 F.3d at 794 (quoting *Gulf Oil*, 330 U.S. at 508). Each is addressed below.

### 1.     Ease of Access to Evidence

Swell X argues that the officers and directors of Tendeka and Swellfix UK are in Scotland; the dispute arises from an employment relationship between Swellfix UK and Glover in Scotland; documents that Glover allegedly took from Swellfix would be in Scotland; and the documents relating to relevant business relationships are located in Scotland.  But Swell X overstates the difficulties in access to this evidence if the claims against it remain in this Texas court.

Tendeka and Elite chose this forum to litigate issues involving the contract.  Kevin Miller, vice-president for Tendeka's North and South America divisions, stated in his declaration that Tendeka's witnesses live in Houston and that Tendeka has documents relevant to this dispute in Texas.  (Docket Entry No. 19-2 at ¶ 10).  Even assuming that some relevant documents are located in Scotland, Swell X has not demonstrated that the documents are so voluminous or difficult to obtain in Houston as to weigh in favor of dismissing the claims against Swell X.  While there is a related case in Scotland, it is an employment case between Glover and his employer, Swellfix UK.  Swell X does not show how documents relating to the employment case relate to this tortious interference claim between  parties who are not involved in the suit proceeding in Scotland.

This factor does not weigh in favor of dismissal.

### 2.     Availability of Compulsory Process

Swell X summarily claims that no potential witnesses live in this district and that, except for Steve Glidewell of Elite, all relevant witnesses are in Scotland.  Swell X does not identify the witnesses in Scotland, and Tendeka has stated that its witnesses are in Houston.  Swell X does not dispute that Elite is a Mississippi company and its witnesses are located there.  This factor does not weigh in favor of dismissal.

18

### 3.      Costs of Obtaining Willing Witnesses

Swell X asserts that the majority of witnesses reside in Scotland and that it would be costly to litigate in this district.  This argument ignores the fact that Tendeka and Elite must litigate the underlying breach of contract claim in this district and that Tendeka's witnesses and Elite's witnesses are in the United States, not Scotland.  This factor does not weigh in favor of dismissal.

### 4.      Other Factors

The practical factors that make the trial easy, expeditious, and inexpensive all weigh in favor of denying Swell X's motion to dismiss.  *DTEX*, 508 F.3d at 800.  The breach of contract claim between Tendeka and Elite must be litigated in this forum.  Requiring Tendeka to litigate in Scotland the related tortious interference claim would require Tendeka to present the same proofs in two proceedings, with significant added burdens, delay, and expense.  This factor weighs heavily against dismissal.

### 5.      Summary of the Private-Interest Factors

Tendeka's choice of forum is presumptively valid.  Swell X has failed to show that any, or all, of the private-interest factors weigh in favor of dismissing the claims against it in Texas, while retaining the claims against Elite and requiring litigation in both Texas and Scotland.

### C.      The Public-Interest Factors

The public-interest factors include

> (I) the administrative difficulties flowing from court congestion; (ii) the local interest in having localized controversies resolved at home; (iii) the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; (iv) the avoidance of unnecessary problems in conflict of laws, or in application of foreign law; and (v) the unfairness of burdening citizens in an unrelated forum with jury duty.

*DTEX, LLC*, 508 F.3d at 795 (quoting *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 342 (5th Cir. 1999)).  These factors also weigh in favor of denying the motion to dismiss.

### 1.    Administrative Difficulties

Swell X summarily asserts that the "lawsuit would simply add to court congestion" and that the "Court will be required to apply and interpret foreign law."  Docket Entry No. 10 at 9.  But it is unlikely that foreign law applies, and Swell X has not shown that the tortious interference claims present unusual complexity or difficult administrative problems.  *See, e.g.*, *id.* at 802 (noting that administrative factors weigh in favor of dismissal where there were "difficulties obtaining evidence from Mexico, the lengthy and involved background of the litigation over the equipment in different Mexican tribunals, and the likely application of Mexican law.").  This factor weighs against dismissal.

### 2.    The Forum's Interest in Resolving the Controversy

Tendeka's principal place of business is Houston, Texas, where it maintains an office, laboratory, and a warehouse.  The contract that it entered into, and that Swell X allegedly interfered with calls for litigation in Texas under Texas law.  Texas has an interest in this dispute.

Swell X paints this case as an employment dispute between Swellfix UK and Glover.  But this ignores the fact that the contract that Elite allegedly breached and Swell X allegedly interfered with was entered into and signed by Tendeka, a Texas domiciliary.  Tendeka does not seek to have this court adjudicate claims involving Glover's employment contract with Swellfix.  Tendeka alleges that Elite breached "(I) its confidentiality obligations under the LSA; and (ii) its obligation [under the LSA] to sell swellable packers" and that Swell X tortiously interfered with those LSA provisions.  This factor does not support dismissal.

### 3.     The Governing Law

Texas law will likely apply to this case.  "For both tort and contract cases, Texas follows the 'most significant relationship test' set out in the Restatement (Second) of Conflict of Laws § 6 and § 145."  *DTEX, LLC*, 508 F.3d at 802 (citing *Torrington Co. v. Stutzman*, 46 S.W.3d 848 (Tex. 2000); *Guiterrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979)).  "Some relevant factors to consider include (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and the place where the relationship, if any, between the parties is centered."  *Id.* (quotations omitted).  Tendeka, a Texas domiciliary, is suing for interference with its contract with a Mississippi entity that is expressly governed by Texas law.  The fact that Swell X is domiciled in Scotland does not make Scotland the place that has the most significant relationship to the claims.  Though Glover's contract with Swellfix is governed by Scottish law, Swell X has not provided a basis to conclude that Scottish law would apply to these claims.  This factor weighs against dismissal.

### 4.     The Burden on Citizens

This lawsuit involves a Texas contract and a Texas domiciliary.  Litigating the tortious interference claim as part of this action will not impose any undue burden on Texas citizens.  *See id.* at 803.

### 5.     Summary of the Public-Interest Factors

Swell X has only summarily addressed the public-interest factors.  Swell X presents no basis to find that they weigh in favor of dismiss the tortious interference claims against it to permit litigation in Scotland.

The motion to dismiss based on forum non conveniens is denied.

21

## IV.    The Motion to Abstain

Swell X also moved the court to abstain from adjudicating the merits of this case until the lawsuit in Scotland between Glover and Swellfix is resolved.  *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).  Swell X argues that the litigation in Scotland is a parallel proceeding.

"Federal courts have a 'virtually unflagging obligation' to exercise the jurisdiction conferred on them by Congress.'" *Noble Drilling Servs., Inc. v. Noble Denton Marine, Inc.*, No. 4:09-cv-3074, 2010 WL 1790202, at *4 (S.D. Tex. May 4, 2010) (quoting *Finova Capital Corp. v. Ryan Helicopters USA*, 180 F.3d 896, 898 (7th Cir. 1999)).  "The *Colorado River* abstention doctrine is based upon considerations of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Bates v. Laminack*, 938 F. Supp. 2d 649, 662 (S.D. Tex. 2013) (quoting *Colorado River*, 424 U.S. at 817).  "'The basic notion' underlying what has come to be known as the *Colorado River* doctrine 'is that in certain circumstances it may be appropriate for a federal court to refrain from exercising its jurisdiction to avoid duplicative litigation.'" *Noble Drilling Servs., Inc.*, 2010 WL 1790202, at *4 (quoting *Al-Abood v. El-Shamari*, 217 F.3d 225, 232 (4th Cir. 2000)).  "Courts evaluating a request for *Colorado River* abstention must be satisfied that (1) there is a parallel proceeding pending in state court and (2) 'exceptional circumstances' warrant abstention." *Bates*, 938 F. Supp. 2d at 662. (citing *RepublicBank Dallas, N.A. v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir. 1987); *Kelly Inv. Inc. v. Cont'l Common Corp.*, 315 F.3d 494, 497 (5th Cir. 2002)).  "Although most courts consider abstention in the context of parallel state court proceedings, several courts have used the *Colorado River* abstention framework when deciding whether to abstain from exercising jurisdiction in the face of parallel foreign proceedings."

*Noble Drilling Servs., Inc.*, 2010 WL 1790202, at *4 (citing *Finova Capital*, 180 F.3d at 898; *Al-Abood*, 217 F.3d at 232.)

The threshold question is whether the lawsuit in Scotland is a parallel proceeding.  A parallel proceeding involves the same issues and the same parties.  *See Am. Guar. & Liab. Ins. Co. v. Anco Insulations, Inc.*, 408 F.3d 248, 251 (5th Cir. 2005) ("*Colorado River* discretion to stay is available only where the state and federal proceedings are parallel–i.e., where the two suits involve the same parties and the same issues."); *see also LAC Real Estate Holdings, LLC v. Biloxi Marsh Lands Corp.*, 320 F. App'x 267, 270 (5th Cir. 2009).

Though there is some overlap in the factual basis between the two proceedings, Swell X concedes that the actions have been brought by distinct legal entities.  The fact that the same parent company owns the plaintiffs in both actions is not a basis to find that they are the same party.  Swell X cites no legal support for that proposition.  Elite is not a party to the Scottish action, and Glover is no longer a party to this action.  The two actions do not involve the same parties.

The legal issues are also different.  Tendeka has sued Elite in Texas for a breach of the Elite-Tendeka LSA and Swell X for its role in that breach.  Glover's employer, Swellfix, has sued him in Scotland for breaching the Swellfix-Glover employment contract.  The employment contract is not at issue in this court; the Elite-Tendeka LSA is not in issue in the Scottish action.  Though the Scottish plaintiff and the Texas plaintiff seek the same injunctive relief — for Swell X to stop selling swellable packers —that does not make the actions parallel.  A finding in the Scottish proceeding that Glover did not breach his employment contract does not necessarily resolve whether Elite breached the LSA with Tendeka or Swell X's role in that breach.

Because Swell X has not made the threshold showing that this action is parallel with the

action in Scotland, the court denies the motion to abstain under *Colorado River*.

**III.     Swell X's Motion to Dismiss for Failure to State a Claim**

Swell X argues that the complaint fails to state a claim for tortious interference of an existing

contract.

**A.     The Legal Standard for a Motion to Dismiss**

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be

granted." FED. R. CIV. P. 12(B)(6).  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007),

and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court confirmed that Rule 12(b)(6) must

be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim

showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  To withstand a Rule 12(b)(6)

motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."

*Twombly*, 550 U.S. at 570; *see also Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368,

372 (5th Cir. 2008).  The Supreme Court has explained that "the pleading standard Rule 8 announces

does not require 'detailed factual allegations,' but it demands more than an unadorned,

the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677.

"[I]n deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry

to the facts stated in the complaint and the documents either attached to or incorporated in the

complaint . . . courts may also consider matters of which they may take judicial notice." *Lovelace

v. Software Spectrum, Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996).  The court may "consider documents

integral to and explicitly relied on in the complaint, that the defendant appends to his motion to

dismiss, as well as the full text of documents that are partially quoted or referred to in the

complaint." *In re Sec. Litig. BMC Software, Inc.*, 183 F. Supp. 2d 860, 882 (S.D. Tex. 2001).  The

court may consider such extrinsic materials as the insurance policy certificate and related documents without converting the motion into one seeking summary judgment. *See Md. Manor Assocs. v. City of Houston*, 816 F. Supp. 2d 394, 404 n.5 (S.D. Tex. 2011).

### B.    Analysis

Swell X argues that Tendeka has failed to state a claim against it for tortious interference with the Elite-Tendeka LSA.  To succeed on its claim, Tendeka must show that it had a valid contract with Elite, that Swell X intentionally interfered with that contract, and that Swell X's interference proximately caused Tendeka harm. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2007).

The complaint alleges that Tendeka and Elite entered into the LSA on October 30, 2009. (FAC ¶ 7).  The complaint quotes from the exclusivity and confidentiality clauses contained in the LSA; alleges that Swell X, with knowledge of the LSA, worked secretly with Elite to manufacture and swell swellable packers, in violation of the LSA's confidentiality and exclusivity clauses; and that Elite invested in Swell X through a holding company to pursue these purposes, in violation of the LSA.  Tendeka has stated a plausible claim for tortious interference with the LSA against Swell X.

In contrast, Tendeka alleges summarily and in conclusory fashion that Swell X tortiously interfered with its contracts with customers as opposed to suppliers.  Swell X correctly points out that this allegation lacks any factual basis.  Tendeka does not defend against Swell X's argument that this claim is deficient.  Tendeka's briefing provides no better basis for the claim.  The motion to dismiss the claim that Swell X tortiously interfered with Tendeka's customer contracts is granted. The claim is dismissed, without prejudice.

25

Swell X's motion to dismiss is granted in part and denied in part.

## IV.    Conclusion

The court grants Glover's motion to dismiss, (Docket Entry No. 14), denies Swell X's motion to dismiss for forum non conveniens, (Docket Entry No. 10), denies Swell X's motion to abstain, (Docket Entry No. 10), and grants in part and denies in part Swell X's motion to dismiss for failure to state a claim, (Docket Entry No. 12).  The dismissals are without prejudice.  A status conference is set for **March 24, 2014** at 4:30 p.m. in Courtroom 11-B.

SIGNED on March 12, 2014, at Houston, Texas.

Lee H. Rosenthal
United States District Judge